JOHN F. BOLES *vs.* JOHN J. MERRILL & others.

Suffolk.　January 23, 1899. — May 22, 1899.

Present: HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Sale — Fraudulent Representations — Dealers' Talk — Rescission.*

The statements, in effecting a sale of personal property used in a business, by an agent assuming to deal with it as an owner, that he had sold it and bought it back, (though the price which he said he paid probably falls within the rule of dealers' talk,) that he had a certain number of regular customers in the business who paid him a stated sum monthly, and that the business was earning him net at the rate of a certain sum a year, are material representations, which, if false and fraudulent and inducing the sale, will entitle the buyer to rescind it; but the statement that a third person was seeking to buy the property and had made an offer of a certain sum for it which he was to pay if he could raise the money, is merely dealers' talk.

If the buyer of personal property used in a business discovers, during the first week after he has taken possession of the property, that statements which induced the sale were false and fraudulent, and at the end of the week notifies the seller and demands back the money paid by him and offers to return the property, and the seller refuses to consent to any rescinding of the contract, and the buyer then tests the matter further and carries on the business for two months, when he makes an absolute rescission and places the property at the seller's disposal, the buyer is entitled to rescind the sale, it not appearing that the property was not in as good condition then as when the sale was made.

BILL IN EQUITY, filed November 22, 1895, in the Superior Court, against John J. Merrill, Gusteen I. Kenerson, and Mary J. Kenerson, to rescind a sale of certain personal property. A decree was ordered for the plaintiff; and the defendants appealed to this court. The facts appear in the opinion.

*J. M. Browne,* for the defendants.

*J. Bon & J. S. Richardson,* for the plaintiff.

LATHROP, J.　This is a bill in equity, filed November 22, 1895, by the purchaser of certain personal property against the sellers and Gusteen I. Kenerson, their agent, to rescind a sale on the ground of false and fraudulent representations made by Kenerson, who effected the sale. The property consisted of certain horses and wagons and other articles used in an express business.

The master has found the following facts. The negotiations for the sale extended over ten days or a fortnight, and resulted

in the delivery of a bill of sale. The consideration paid by the plaintiff was $500 cash, and a negotiable promissory note for $1,000, payable to the defendant Merrill or order, in regular monthly instalments of thirty dollars each month, the first instalment to be paid November 1, 1895, with interest monthly at the rate of six per cent per annum. This note was secured by a mortgage of the same property made by the plaintiff to Merrill. While the bill of sale was signed by Merrill and Mary J. Kenerson, the title to the property was in Merrill. Mrs. Kenerson, who was the wife of Gusteen I. Kenerson, held the property under a lease, dated August 22, 1894, by which she agreed to pay $1,200 in monthly instalments of $50 each, with interest. When the money was paid the articles were to become her property. Up to August, 1895, she had paid about $325. The $500 paid by the plaintiff was divided between two of the defendants, Mary J. receiving $100 and Merrill the remainder.

The master further found that during the negotiations and before the delivery of the bill of sale and the payment of the consideration thereof, Gusteen I. Kenerson made the following false and fraudulent representations. 1. After stating that at a prior time he had sold the property, he stated to the plaintiff that about January 1, 1895, he paid therefor $2,000. 2. That he stated to the plaintiff that a man named Moore, engaged in the express business in Boston, was seeking to buy the business, and had offered him $2,000 for it, which he was to pay if he could raise the money. 3. That he had ten regular customers in the business, who each paid ten dollars a month, and that one customer named Marble paid sixty dollars a month. 4. That the business was earning him net at the rate of $2,500 a year.

The master further found that each of these statements was known by Kenerson to be false when he made them, and that they were made to induce the plaintiff to enter into the proposed trade; and that they were believed by the plaintiff, and influenced him to make the purchase.

The plaintiff took possession of the property under his bill of sale, September 9, 1895, and the express business was carried on by two brothers of the plaintiff for one week. At the end of the week the plaintiff learned that he had been deceived and defrauded, and on September 16 had an interview with the de-

fendant Gusteen I. Kenerson, in which the plaintiff notified him
that he had been deceived and defrauded, and demanded back
the money paid and the note given by him, and offered to return
all the property. The defendant Kenerson refused to consent
to any rescinding of the contract. The plaintiff's brothers con-
tinued the business until November 9, 1895, at a net loss, and
on that day, at an interview between the plaintiff and the de-
fendants Merrill and Gusteen I. Kenerson, the plaintiff notified
the defendants that he had been deceived and defrauded, and
demanded of them the money paid and the note given by him,
and placed all the property in a stable in/the name and subject
to the order of the defendant Merrill, and gave Merrill written
notice thereof. Subsequently Merrill took possession of all the
property under his mortgage, and sold it by public auction to
the defendant Gusteen I. Kenerson, who took possession thereof.
And at a subsequent date the business and property were sold
by the defendants to one Shannahan, who now is in possession
thereof. The defendant Merrill was not shown to have had any
knowledge of the plaintiff's dissatisfaction with the trade and
transaction until said 9th day of November. No payment ever
has been made by the plaintiff upon his mortgage note.

The master further found that the fair market value of all the
property conveyed by the bill of sale of September 9, 1895, in-
cluding the good will and all interests thereby conveyed, was at
that time $700.

The master also found that on the facts stated the plaintiff
was entitled to a decree that the note and mortgage for $1,000
were obtained by fraud, and should be surrendered to the plain-
tiff; and that the defendants should repay the plaintiff the sum
of $500.

Subsequently the case was heard on exceptions to the master's
report, and a decree entered in accordance with the master's
findings, with costs. The case is before us on an appeal by the
defendants from this decree.

It is contended by the counsel for the defendants, in the first
place, that some of the findings of the master are not warranted
by the evidence. This point is not much insisted upon, and we
are referred merely to the evidence in defence. While there
was contradictory evidence on some points, we are of opinion

that the master's findings are fully sustained by the weight of the evidence in the case, and that a gross fraud was perpetrated on the plaintiff.

The defendants contend that the representations amounted merely to dealers' talk, which the law cannot take notice of. But the court of recent years has shown no disposition to extend the decisions in favor of vendors' representations beyond the limits to which they have gone. *Way* v. *Ryther*, 165 Mass. 226, 229. *Kilgore* v. *Bruce*, 166 Mass. 136, 138. *Andrews* v. *Jackson*, 168 Mass. 266, 268. In the present case, Gusteen I. Kenerson assumed to be dealing with the property as an owner, while he was merely an agent of the other defendants. His statement that he had sold the property and bought it back was false and fraudulent, and while the price which he said he paid probably falls within the rule of dealers' talk, ( *Gassett* v. *Glazier*, 165 Mass. 473, and *Way* v. *Ryther*, *ubi supra*, and cases cited,) yet, excluding the price, we have left representations which must be deemed material. The statement that Moore was seeking to buy the property and had made an offer of $2,000 for it, which he was to pay if he could raise the money, seems to us to be merely dealers' talk. *Brown* v. *Castles*, 11 Cush. 348.

The statement by Kenerson that he had ten regular customers in said business who each paid him ten dollars a month, and that one customer named Marble paid sixty dollars a month, is not open to the objection that it is a promissory representation as to the future, nor can it be regarded as mere dealers' talk. It relates to a very material fact on which the plaintiff had the right to rely. The same is true of the statement that the business was earning him net at the rate of $2,500 a year. *Smith* v. *Everett*, 126 Mass. 304.

The remaining question is whether the plaintiff is entitled to rescind the sale. We see no reason why he is not. He discovered the fraud at some time during the first week after he took possession of the property. At the end of the week he notified Kenerson, and demanded back the money paid and the note given by him, and offered to return all the property. The latter refused to consent to any rescinding of the contract. The plaintiff then tested the matter further, and carried on the business for two months, when he made an absolute rescission, and

placed the property at the disposal of Merrill. It does not appear that the property was not in as good condition at this time as when the sale was made. Under the facts of the case, we are of opinion that there was no unwarrantable delay in rescinding the sale, and that the decree of the Superior Court should be affirmed. See *Smith* v. *Everett*, 126 Mass. 304; *Hedden* v. *Griffin*, 136 Mass. 229.                    *So ordered.*